STATE OF IOWA v. ORMAN MCPHERSON, Appellant.

**Murder:** PREMEDITATION: *Instructions.* An instruction stated that it was not essential, to constitute a homicide murder in the first degree, that the wilful intent shall exist in the mind of the slayer any considerable legnth of time; it is sufficient if there was a fixed determination to maliciously kill, distinctly framed, at any time before the fatal injury was inflicted; that if defendant had framed in his mind a wilful and premedi-

3 tated design with malice aforethought to take the life of de-ceased, and the fatal shot was fired in furtherance of that de-sign, without any justifiable cause or lawful excuse therefor, then defendant acted with deliberation and premeditation; but, that, if the fatal act was not accompanied with some degree of deliberation and premeditation, or was not the result of a fixed determination on the part of the defendant to kill the deceased, defendant should be acquited. *Held,* proper.

**Indictments:** DEFINITENESS. Under Code, sections 5289, 5290, providing that an indictment is sufficient if it enables a person

1  of common understanding to know what is intended, an indictment charging the crime to have been committed on the "twentieth day of September," and in which at various places the sign "&" is used for the word "and" is not fatally defective.

**Murder in First Degree:** SUFFICIENCY. An indictment which charges that the act of defendant which caused the death of the deceased was done wilfully, feloniously, deliberately, premeditated-  2  ly, and with malice aforethought, and with the specific intent to kill and murder the deceased, is sufficient to charge defendant with murder in the first degree,

NOTICE OF TESTIMONY. Code, section 5373, requires a notice of witnesses to be examined by the prosecution to be given a defendant in a criminal prosecution, stating the name, place of residence, and occupation of such witness. A notice correctly stated the witness' name and place of residence. As to his occupation it was stated that he was an electrician, and the manufacturer of electric belts. It was shown that he was not  4  an electrician, and in the manufacture of his belts, no electricity was generated. *Held*, that the notice was sufficiently accurate.

**Evidence:** CLERK OF GRAND JURY AS WITNESS. Code, sections 5267, 5268, provide that every member of the grand jury must keep secret the proceedings of that body, except that he may be required to disclose the testimony of a witness examined before  5  it for the purpose of ascertaining whether it is consistent with that given by him before the court. Section 5256, specifying  6  the oath the clerk of the grand jury must take, requires him not to reveal to any one its proceedings, or the testimony given before it. *Held*, that for the purpose of impeaching the testimony of a state witness the clerk of the grand jury may be called to disclose contradictory testimony of such witness given in his examination before the grand jury.

SAME: *Harmless exclusion.* The refusal of the court to allow the clerk of the grand jury to be called in a criminal prosecution to disclose contradictory testimony of a state witness given  7  in his examination before the grand jury for the purpose of impeachment is not reversible error, where the defendant subsequently called three members of the grand jury, and proved by them without controversy the fact sought to be established by the clerk.

**Review on Appeal:** MISCONDUCT OF COUNTY ATTORNEY. Where the showing as to the use of objectionable language by the prosecuting attorney in argument was made by affidavits in connection  8  with the motion for a new trial, which were denied by affidavit of the prosecuting attorney, the ruling of the trial court in the matter will not be reversed.

*Appeal from Louisa District Court.*—Hon. James D. Smythe, Judge.

Monday, October 7, 1901.

Defendant was charged, under the name of Norman McPherson, with murder in the first degree in the killing of one John Finley. He answered that his right name was Orman McPherson, and pleaded not guilty. The jury returned a verdict of guilty in the first degree and fixed the punishment at imprisonment for life. Defendant appeals.—*Affirmed.*

*E. B. Tucker* and *D. J. O'Connell* for appellant.

*Charles W. Mullan,* Attorney-General, and *Charles A. Van Vleck,* Assistant Attorney-General, for the State.

McClain, J.—There was no question as to the homicide. When Finley was killed he was the marshal of the town of Morning Sun, and seems to have had the custody of defendant for some previous alleged disturbance. Defendant, in his testimony, denies that he had any knowledge or notice that Finley was marshal, or that he was making an arrest. He also testifies as to some threats made by others that he (defendant) would be mobbed, or run out of town, and in oral argument counsel for defendant suggested the theory that defendant acted in self-defense, under the impression that he was in danger of unlawful violence at the hands of Finley and others. It is not necessary to go into the details of the evidence as to the circumstances surrounding the homicide, or as to the difficulties in which defendant had been concerned on previous visits to Morning Sun. His home was at Keithsburg, Ill., and he had come to Morning Sun on this, as on previous occasions, for the ostensible purpose of visiting his child, which was in the custody of its mother, who was no longer living with him. There was ample evidence to

sustain the verdict of the jury if the witnesses for the prosecution spoke the truth, and the credibility of the witnesses and the truthfulness of their evidence were for the jury.

I.    The indictment charges the crime to have been committed on the "20 day of September," and at various places in the indictment the sign "&" was used for the word "and."

The defendant contends that the use of these abbreviations rendered the indictment fatally defective; but, in view of the provisions of our Code (sections 5289, 5290) to the effect that the indictment is sufficient if it enables "a person of common understanding to know what is intended," and is not to be held insufficient for any matter "which does not tend to prejudice the substantial rights of the defendant upon the merits," it is plain that there is nothing in this objection. "The Roman numerals and Arabic figures are to be taken as a part of the English language" (Code, section 48, subd. 22). And see *State v. Seamons,* 1 G. Greene, 418; *Winfield v. State,* 3 G. Greene, 339. "The sign '&' for 'and' has been used in practice too long for a court to entertain an objection to its employment." *Pickens v. State,* 58 Ala. 364. "The use of well-understood abbreviations in an indictment does not render it defective." *Molton v. State,* 29 Tex. App. 528 (16 S. W. Rep. 423). And see *State v. Reed,* 35 Me. 489 (58 Am. Dec. 727); *Com. v. Hagarman,* 10 Allen, 401.

II.    The indictment alleges that the defendant "in and upon the boy of John Finley then & there being, willfully, feloniously, deliberately, premeditatedly, & of his malice aforethought did commit an assault with a deadly weapon, being a pistol then & there held in the hand of the said Norman McPherson & loaded & charged with powder & bullet & then & there the said Norman McPherson with the specific intent to kill & murder the said John Finley, willfully, feloniously, deliberately, premeditatedly & of his malice aforethought did shoot off & discharge

the contents of said deadly weapon at, against & into the body of said John Finley, thereby willfully, feloniously, premeditatedly, deliberately & of his malice aforethought inflicting upon the body of said John Finley a mortal wound, of which mortal wound the said John Finley did then and there die." Defendant contends that under the cases of *State v. McCormick,* 27 Iowa, 402, and *State v. Andrews,* 84 Iowa, 88, these allegations are not sufficient to charge murder in the first degree. But it is to be noticed that the objection sustained to the indictment in those cases was that, while they alleged willful, deliberate, and premeditated assault with malice aforethought, they did not allege that such assault was with the intent to kill the deceased. In the inindictment in this case it is charged that the assault was "with the specific intent to kill and murder" the deceased, and this is sufficient to make the indictment good under the well-settled practice in this state as explained in *State v. Shelton,* 64 Iowa, 333, and *State v. Perigo,* 70 Iowa, 658. It is difficult to see what further could have been alleged to show the commission of the crime charged. To have said that defendant willfully, deliberately, premeditatedly, and with malice aforethought murdered the deceased would have constituted the statement of a mere conclusion, and such a conclusion would not help out the indictment if otherwise insufficient. *State v. Andrews, supra.* As supporting the sufficiency of this indictment, see *State v. Wood,* 112 Iowa, 411.

III. Complaint is made of an instruction as to what will constitute such deliberation and premeditation as to render the homicide murder in the first degree. The court told the jury that: "It is not essential that the wilful intent, premeditation, and deliberation shall exist in the mind of the slayer for any considerable length of time before the actual perpetration of the crime. It is sufficient if there was a fixed design or determination to maliciously kill, distinctly framed in the mind of such slayer,

at any time before the fatal injury is inflicted.   And in this case, if the jury believe from the evidence, beyond a reasonable doubt, that the defendant assaulted and shot the deceased at the time and place and in the manner charged in the indictment, and that either at some time before, or in the moment or instant of time immediately before, the fatal shot was fired, the defendant had framed in his mind a willful, deliberate, and premeditated design or purpose of his malice aforethought to take the life of the said deceased, and that the said fatal shot was fired by the said defendant in furtherance of that design or purpose, without any justifiable cause or lawful excuse therefor, then it may be said that the defendant acted with deliberation and premeditation, and you should find him guilty of murder in the first degree. But if you fail to find from the evidence, beyond a reasonable doubt, that the said fatal act of the defendant was accompanied with some degree of deliberation and premeditation, or that it was the result of a fixed determination on the part of the defendant to kill the deceased, you must then acquit the defendant of the crime of murder in the first degree." It is well settled that no particular length of time of premeditation or deliberation is required.    *State v. Johnson,* 8 Iowa, 525, 530; *State v. Hockett,* 70 Iowa, 442, 449; *People v. Bealoba,* 17 Cal. 389, 399; *Wright v. Com.,* 33 Grat. 880. The authorities seem to be in conflict as to whether it is error to instruct the jury that it is sufficient if they find that there was deliberation and premeditation at the instant of the killing, and this court has expressed the view that the intent to kill must have preceded the act of killing long enough to permit premeditation and deliberation.    *State v. Sopher,* 70 Iowa, 494.   But the instruction quoted above is not ambiguous on this point.   It requires the jury to find that "either at some time before or in the moment or instant of time immediately before the fatal shot was fired the defendant had

formed in his mind a willful, deliberate, and premeditated design or purpose of his malice aforethought to take the life of the said deceased." It is well settled that, if the intent to take life is executed after deliberation and permeditation, though but for a moment or an instant, the crime may be murder in the first degree. *State v. Johnson, supra; State v. Brown,* 41 Minn. 319 (43 N. W. Rep. 69); *Donnelly v. State,* 26 N. J. Law, 463, 509; *Koerner v. State,* 98 Ind. 7; *State v. Dunn,* 18 Mo. 419, 424; *State v. Jennings,* 18 Mo. 435, 443; *Herrin v. State,* 33 Tex. 639, 645. Counsel for the defense quotes only the last sentence of the instruction as given above, and insists that it authorized the jury to look only at·the instant of the killing in determining whether there was deliberation and premeditation; but, taken as a whole, the instruction cannot justly be given that interpretation. It is to be borne in mind that this discussion relates to the correctness of the instruction, and not to the sufficiency of the evidence. There was evidence before the jury from which they might properly find that the killing was premeditated two or three days before it took place.

IV. Objection was made to the calling of a witness whose name was not indorsed on the indictment, and who was not before the grand jury, on the ground that his occupation was incorrectly stated in the notice required in such cases by Code, section 5373. The notice given described him as an "electrician and manufacturer of electric and galvanized belts." It appeared from his testimony that he was not an electrician, and that in the manu·facture of his belts no electricity was generated. But we think that, clearly, the description of the witness, together with the correct statement of his name and place of residence, was sufficiently accurate, in the absence of any showing that the defendant was misled.

V. Defendant called the clerk of the grand jury which returned the indictment against him, who was not a.member

of the grand jury, but appointed under Code, section 5256, to testify as to what one of the state's witnesses had said in his examination before the grand jury with reference to whether Finley had struck defendant before defendant fired the fatal shot.   This testimony was called for with a view of impeaching the evidence given on the trial by the same witness to the effect that he did not see Finley strike the defendant.   The court sustained an objection to the question on the ground that the clerk of the grand jury is prohibited from disclosing its proceedings or the testimony given before it.   This ruling is now assigned as error. Code, section 5267, provides that "every member of the grand jury must keep secret the proceedings of that body and the testimony given before it, except as provided in the next section;" and the exception is, "A member of the grand jury may be required by the court to disclose the testimony of a witness examined before it for the purpose of ascertaining whether it is consistent with that given by him before the court, or to disclose the same upon a charge of perjury against the witness."   The section already cited as to the appointment of a clerk of the grand jury specifies the oath which he is to take, including the obligation not to "reveal to any one its proceedings or the testimony given before it." There is no direct provision prohibiting the clerk from disclosing the evidence given before the grand jury, nor exception authorizing him to do so in any case.   But at common law it is well settled that neither a member nor the clerk of a grand jury, nor the prosecuting attorney present during proceedings before it, can be examined as to what a witness testified to before the grand jury, except that in the discretion of the court such a person may be required to do so when it becomes material in the administration of justice.   1 Bishup, New Criminal Procedure, sections 857, 858; 17 Am. & Eng. Enc. Law (2d Ed.) 1294; *People v. Hulbut,* 4 Denio, 133 (47 Am. Dec. 244); *Jenkins v. State,* 35 Fla. 737 (18

South. Rep. 182, 48 Am. St. Rep. 267). Various reasons have been assigned for imposing secrecy as to proceedings before the grand jury, but these reasons are founded upon public policy. There is no privilege, so far as the witness is concerned; and, when the reasons of public policy cease, the rule requiring secrecy ceases also. *Com. v. Mead,* 12 Gray, 167 (71 Am. Dec. 741); *Gordon v. Com.,* 92 Pa. St. 216 (37 Am. Rep. 672); *State v. Wood,* 53 N. H. 484; *Bressler v. People,* 117 Ill. 422 (8 N. E. Rep. 62); *People v. Northey,* 77 Cal. 618, 633 (19 Pac. Rep. 865, 20 Pac. Rep. 129). And it is held that the oath of secrecy which at common law is administered to the grand juror (for which no specific provision is found in our statutes) "is no legal or moral impediment to his solemn examination under the direction of a court as to the evidence before him whenever it becomes material in the administration of justice." *State v. Broughton,* 29 N. C. 96 (45 Am. Dec. 507). "There is, in the very nature of things, a tacit condition implied that in furtherance of justice a juror shall in some instances speak when the law, through its constituted tribunals, explicitly commands him to do so." *Izer v. State,* 77 Md. 110 (26 Atl. Rep. 282. "The grand juror's oath is intended to further, and not to frustrate, the due administration of justice; and while its observation is obligatory on him, and binds him for all time not to voluntarily disclose what has transpired in the jury room, it cannot be invoked to thwart the truth, or to mask and cover up falsehood, when the juror is called upon in a court of justice to divulge what he would otherwise, but for the mandate of the law commanding him to speak, be bound to keep secret." *Kirk v. Garrett,* 84 Md. 383, 413 (35 Atl. Rep. 1089). And to the same effect see *State v. Benner,* 64 Me. 267, 282; *Hinshaw v. State,* 147 Ind. 334, 375 (47 N. E. Rep. 157); *State v. Van Buskirk,* 59 Ind. 384. The situation is therefore this: The common-law rule has, so far as grand jurors are concerned, been par-

tially embodied in the provisions of Code, sections 5267, 5268, and possibly the cases in which a grand juror may be required to disclose the testimony given before the grand jury are limited to the two specified in the latter of these sections, though as to this see *Jenkins v. State,* 35 Fla. 737 (18 South. Rep. 182, 48 Am. St. Rep. 267), and *Hinshaw v. State,* 147 Ind. 334, 375 (47 N. E. Rep. 157), which hold that similar statutory provisions do not limit the cases in which the grand juror may be required to thus testify. But as to the clerk, there being no statutory provision on the subject except that to be implied from the oath administered to him, his case must be governed by the common-law rule, which is not to be deemed affected by the language of the oath. Therefore, for the purpose of impeaching the testimony of the state's witness, the clerk of the grand jury may properly be called upon to disclose contradictory testimony of such witness given in his examination before the grand jury, and the court erred in sustaining the objection. It does not follow, however, that the case must be reversed on account of this error. After the objection was sustained, the defendant called three members of the grand jury as witnesses, and proved by them without controversy the very fact sought to be established by the clerk, and therefore he suffered no prejudice in being deprived of the opportunity of proving that fact by the clerk's testimony. We have frequently held that error in rejecting testimony will be without prejudice where the fact sought to be established is fully shown by the testimony of other witnesses. *State v. Woodson,* 41 Iowa, 425; *Hoadley v. Hammond,* 63 Iowa, 599; *State v. Pratt,* 40 Iowa, 631. The testimony of the clerk would have been only cumulative to that of the grand jurors, not tending to establish any affirmative fact in defense, but only by way of impeachment; and we cannot think that any injustice resulted to the defendant from its exclusion.

VI. Complaint is made of language alleged to have been used by the prosecuting attorney in argument. But the showing as to the use of such language was made by affidavits in connection with the motion for a new trial, which were denied by affidavit of the county attorney, and the ruling of the lower court in the matter should not be reversed by us in the absence of any conclusive proof of error. The conclusion of the trial judge as to whether the statements were made in his presence or could have been made in his absence is entitled to every presumption of correctness. We find no error in the record, and the judgment must be AFFIRMED.